In The



Court of Appeals



Ninth District of Texas at Beaumont



________________



NO. 09-08-00054-CR


 _____________________



JOE FRANK HORACE, SR., Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the Criminal District Court


Jefferson County, Texas


Trial Cause No. 95770






MEMORANDUM OPINION


 A jury found Joe Frank Horace, Sr. (1) guilty of burglary of a habitation, and the trial
court sentenced Horace, a repeat felony offender, to eighty-eight years of confinement in the
Texas Department of Criminal Justice Institutional Division. See Tex. Pen. Code Ann. §
30.02(a)(3) (Vernon 2003). In this appeal, Horace contends the evidence was legally and
factually insufficient to support his conviction. Because the evidence is sufficient to support
the verdict, we affirm the judgment. 

 Beaumont Police Department Officer Edward Cormier, Sr. responded to a burglary-in-progress call and was dispatched to Vera Johnson's residence in Jefferson County on
August 13, 2005. When he arrived at the scene, Johnson, an elderly woman, had already
been untied by neighbors. She gave Cormier a description of the burglar and her missing
vehicle, a four-door maroon 1980 Pontiac Phoenix. She also informed Cormier that a
shotgun was missing from her home.

 Officer Clint Weir with the Beaumont Police Department also responded to the call
and arrived at the scene after Cormier. Weir obtained the vehicle identification number of
Johnson's vehicle. He followed Johnson to the hospital where she gave him a description
of the burglar. 

 Patricia Murphy, a forensic nurse examiner, testified that she examined Johnson after
the incident and that her injuries were caused by blunt force trauma. 

 One August 13th, one of Johnson's neighbors, Terrence Eaglin, who lived in the
neighborhood with his grandmother, saw a suspicious man walking up and down the street
on which Eaglin and Johnson lived. At trial, Eaglin identified Horace as the suspicious man
he had seen walking up and down the street. Although they had never been introduced,
Eaglin recognized Horace as someone who "used to live in the neighborhood" and someone
he saw "every now and then" in the neighborhood. Around "noontime," Horace approached
Eaglin and asked him for money. Eaglin did not give him any money.

 Around six o'clock that evening, Eaglin saw Johnson's maroon car traveling fast in
a direction Johnson normally did not travel. Eaglin became concerned because after years
of living in Johnson's neighborhood, he had never known her to leave her house in the
evening or to drive fast.

 Eaglin testified he and his friend, Jeremy Keil, went to Johnson's house. Eaglin
observed the garage door and back door were "busted wide open," and found Johnson
restrained and gagged in her living room. She had been beaten and was in shock. Keil called
9-1-1 and the police subsequently arrived. Eaglin later gave a statement at the police
department. He identified Horace in a line-up as the man that he had seen walking down the
street who approached him on the day of the incident.

 Sabil Washington, Eaglin's grandmother, also came to Johnson's aid when she heard
Johnson's vehicle had been stolen. Earlier that day, Washington had gone to the store and
returned. She did not notice any damage to Johnson's garage door and if it had been
damaged, Washington would have noticed. She did not see who drove Johnson's vehicle
away from the scene. Washington identified Horace as someone she had seen months before
visiting former neighbors on her street.

 Eugene Harmon, Jr. testified that around eight or nine o'clock on August 13th, 
Horace came to Harmon's residence. Harmon was surprised to see Horace; he had not seen
Horace in "about 15 years." Harmon stepped outside to speak with Horace and did not see
a vehicle in his driveway. Horace left and came back five or ten minutes later in a maroon
vehicle that Harmon had never seen him in before. Horace said he and his girlfriend's dad
had argued. Horace asked Harmon if he could "stay over." He told Harmon he had just
bought the vehicle. Harmon said he could sleep in the vehicle in the driveway. That night
and the next morning, Horace continued to sleep in the vehicle, and he later asked Harmon
for some water. The day after Horace spent the night in Harmon's driveway, the police
arrived. 

 While on duty the day after he responded to the call at Johnson's residence, Officer
Weir located Johnson's vehicle parked in a driveway. Weir approached the vehicle and saw
a man matching Johnson's description sleeping in the backseat of the vehicle. At trial, Weir
identified Horace as the man he found sleeping in the vehicle. Horace refused to get out of
the vehicle, and after a struggle with the police he was removed from the vehicle and arrested
for the unauthorized use of a motor vehicle. Weir made sure there were no weapons in the
vehicle, and at trial stated he did not know if the keys to the vehicle were ever found. 

 Johnson died of cancer prior to trial. Her daughter, Carroll Ann Smith, testified that
Johnson would only leave the house in her car to go to church, the store, or the doctor, and
did not go out at night. She stated Johnson never mentioned Horace, did not allow anyone
else to drive her car, and always parked her car in the garage. In the days after the incident,
Smith went to Johnson's house and noticed the television and one set of her car keys were
missing. 

 In two issues, Horace challenges the legal and factual sufficiency of the evidence
supporting his conviction. While Horace admits there is overwhelming evidence that
Johnson's home was entered without her consent and some evidence that the perpetrator
committed theft, he claims "the record is devoid of evidence sufficient to establish that
appellant was the perpetrator." He argues that based on the evidence that Horace was in the
neighborhood that day and then later was seen driving Johnson's vehicle down her street,
were the fact-finder to determine Horace was driving Johnson's car without her permission,
the evidence would at best support a conviction for unauthorized use of a motor vehicle. 
According to Horace, the evidence does not support a conviction for burglary of a habitation
because the evidence fails to establish the vehicle was stolen at the time Johnson's residence
was burglarized, no witness identified Horace as a person at Johnson's residence, no witness
stated Horace indicated he participated in the offense, none of Johnson's other stolen
property was found in the vehicle, and there were no fingerprints or DNA evidence linking
Horace to the scene.

 In a legal sufficiency review, an appellate court considers the evidence in the light
most favorable to the verdict to determine whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S.
307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Unless otherwise provided by law, the trier
of fact is the sole judge of the facts proven and of the weight to be given the testimony. Tex.
Code Crim. Proc. Ann. art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979); see also Lancon
v. State, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008) ("Appellate courts should afford
almost complete deference to a jury's decision when that decision is based upon an
evaluation of credibility."). 

 In a factual sufficiency review, the court considers the evidence in a neutral light. 
Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App.), cert. denied, 128 S. Ct. 282, 169
L. Ed. 2d 206 (2007). The issue is whether the evidence supporting the conviction, although
legally sufficient, is so weak that the fact-finder's determination is clearly wrong and
manifestly unjust, or whether conflicting evidence so greatly outweighs the evidence
supporting the conviction that the fact-finder's determination is clearly wrong and manifestly
unjust. Id. 

 A person commits burglary of a habitation if, without the consent of the owner, the
person enters the habitation and commits or attempts to commit a felony, theft, or assault. 
Tex. Pen. Code Ann. § 30.02(a)(3). In a circumstantial-evidence case, it is unnecessary for
every fact to point directly and independently to the guilt of the accused; rather, it is enough
if the finding of guilt is warranted by the cumulative force of all the incriminating evidence. 
Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). In reviewing the sufficiency
of the evidence, "we should look at 'events occurring before, during and after the
commission of the offense[.]'" Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)
(quoting Cordova v. State, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)). Circumstantial
evidence is as probative as direct evidence in establishing an actor's guilt; circumstantial
evidence alone can be sufficient to establish guilt. Guevara v. State, 152 S.W.3d 45, 49
(Tex. Crim. App. 2004). When there is independent evidence of a burglary, the defendant's
unexplained personal possession of the recently stolen property in a burglary may permit an
inference that the defendant is the one who committed the burglary. See Rollerson v. State,
227 S.W.3d 718, 725 (Tex. Crim. App. 2007); Hardesty v. State, 656 S.W.2d 73, 76 (Tex.
Crim. App. 1983).

 There is no dispute that Johnson's residence was burglarized. Eaglin testified he had
seen Horace walking up and down Johnson's street the day of the burglary. Eaglin stated
Horace appeared suspicious that day and had asked him for money. Later that evening, he
saw Horace driving Johnson's vehicle fast down the street. The garage and back doors had
been "busted wide open" and one set of Johnson's keys was missing.

 On the evening of the burglary, Harmon allowed Horace to sleep in a maroon vehicle
in his driveway. Once Horace arrived at his house in the vehicle, he did not leave Harmon's
property until police found Horace sleeping in Johnson's vehicle and took him into custody. 
Weir testified the man he found sleeping in Johnson's car matched Johnson's description of
the burglar. 

 Viewing the record in the light most favorable to the verdict, a rational jury could
have concluded beyond a reasonable doubt that Horace burglarized Johnson's residence.
Furthermore, a neutral review of the entire record does not demonstrate that the proof of guilt
is so obviously weak as to undermine the confidence in the jury's determination, nor does it
demonstrate that the proof of guilt is greatly outweighed by contrary proof. The jury could
draw rational inferences from the testimony. As the trier of fact, the jury was free to
determine the weight given the testimony of each of the witnesses and appellant's possession
of Johnson's vehicle. The evidence is legally and factually sufficient to support the verdict. 
Issues one and two are overruled. The trial court's judgment is affirmed. 

 AFFIRMED.

 _________________________________

 DAVID GAULTNEY

 Justice 

 

Submitted on February 26, 2009

Opinion Delivered April 8, 2009 

Do Not Publish


Before Gaultney, Kreger, and Horton, JJ. 
1. The indictment and the trial court's judgment refer to appellant as Joe Frank Horace,
Sr. a/k/a Joe Frank Horace.